JOYNLS, J.
This is an action of trespass brought by Shepperson, a merchant doing business in the city of Richmond, against Peshine and Gouldthwait, merchants of the city of Newark, New Jersey, which abated, before *the trial as to Gouldthwait, by his death. The declaration alleged that the defendants on, &c., “with force and *430 arms,” and without the knowledge and against the consent of the plaintiff, entered the store of the plaintiff, and then and there from the said store took and carried away a large quantity of the goods and chattels of the said plaintiff, to wit, &c., of the value, &c., and other wrongs to the said plaintiff, then and there did, ..to the damage of the plaintiff $19,000. To this declaration there was a demurrer, which was overruled. There was a trial on the plea of not guilty in 1857, when the ju^ did not agree, and a subsequent trial in 1859, upon which there was a verdict and judgment for the plaintiff for $10,000.
The first error assigned is; that the case was tried while there' were pending and undisposed of a demurrer to a special plea filed, by the defendant, and a motion to exclude another special plea subsequently tendered bjr him.
The substantial matter of these pleas are the same. They set up in bar of the further prosecution of the suit, the fact that the ■plaintiff had, after the institution of the suit, taken the oath of insolvency, by virtue of which 'his interest in the subject matter of controversy' had become vested, as alleged in the first 'plea, in the sergeant of Richmond, and as alleged in the second, in the sheriff of Henrico. But these pleas presented no bar to the action. The action was properly brought in the name of the plaintiff before he took the oath of insolvency, and it might properly proceed.in his name afterwards, whatever rights in respect to the subject matter vested, by the insolvent proceedings, in the sergeant of Richmond or sheriff of Henri co. The irregularity in failing to dispose of the questions raised upon these pleas, affords, therefore, no ground to reverse the judgment. Creel v. Brown, 1 Rob. R. 255, and cases cited. *The next error assigned is the refusal of the court to exclude certain depositions. When the case' was called for trial in 1859, the counsel for the defendant moved the court to exclude these depositions, on the ground that they had been taken without a commission (being taken out of the state) and without notice. A commission was produced, which had not been annexed to -the depositions, but no notice was proved. One of the counsel for' the plaintiff made affidavit tbat these depositions had been read on the former trial, but it was not proved or stated whether they were read without objection, except so far as appeared from the fact that no exception was then taken on the ground of their admission.
If the defendant allowed these depositions to be read on the former trial without objection, as may be inferred to be the fact, he must be considered as waiving objection to them. If the objection was made and overruled, the failure of the defendant to except to the opinion of the court was equally a waiver of the objection. If the defendant desired to renew the objection afterwards, which he might do unless the death of the witnesses or some other reason made it unjust to the plaintiff to allow it, he should have done so in convenient time, and made it known to the plaintiff, so as to enable him to supply the proof of notice, if he could, orto take the depositions again. To spring the objection upon the eve of a second trial, eight years after it has been thus distinctly waived, and when nothing had been done in the meantime to indicate that it was to be relied on, was a surprise upon the plaintiff, and tended to defeat the ends of justice. The object evidently was to delay the trial, and not to protect the just rights of 'the defendant. Hnder these circumstances, the Circuit court did not err in overruling the motion to exclude the depositions.
Upon the final trial sundry instructions were given to *the jury, on motion of the plaintiff, and excepted to by the defendant. These require no particular notice; for while they are assigned as error, no objection is specified, and the assignment of error is evidently not relied on. And-I do not think that any valid objection can be made to either of these instructions.
The defendant also excepted to the refusal of the court to give two instructions moved by him. The first of these instructions consists of two parts, which must be considered separately, as they relate to distinct subjects. The first part relates to the goods which were obtained by Peshine and Gould-thwait from Leonard by purchase in payment -of their own debts. In respect to these goods, the court was asked to say to the jury that the defendant was not liable if the goods were in the possession of Leonard, with authority from the plaintiff to sell them, not restricted by a prohibition to sell to the defendant and Gould-thwait, and if they bought them from Leonard.
But this instruction was not appropriate to the evidence before the jury, and was calculated to mislead them, by confining their attention to the mere form of the transaction, without regard to its real character and substance. For the evidence tended to prove that the defendant and Gouldthwait entered the store of the plaintiff by an arrangement with Leonard, his clerk, after it had been closed for the night, and without the knowledge of the plaintiff, and that during the night they made the purchase from Leonard in payment of their debts, after the failure of their efforts to effect a settlement with the plaintiff. The' jury might well have believed that this whole transaction was a fraud upon the plaintiff, and that whatever authority Leonard had to make sales of the plaintiff’s goods in general and in the course of trade, he had none to make this particular sale, and that the defendant knew it.
*The other part of this instruction relates to the goods that were designed for other creditors of the plaintiff, and it asked the court to say that if these goods were packed up and sent off by Leonard, the defendants are not liable on account of *431 them, unless the plaintiff proves to the satisfaction of the jury that they aided, assisted and concurred in their being- so taken and sent away.
[This instruction speaks of the “defendants,” when there was but one defendant then before the court, but that does not affect the principle.]
As we have heard no argument in this case, we do not know the ground upon which the propriety of this part of the instruction was objected to. It may be that the court treated the first instruction as an entirety, and refused to give it in consequence of the defect in the first part of it. But the two branches of the instruction are really independent of each other. They relate to different subject matters. The propositions embraced in them are as distinct as if they had been propounded as distinct instructions, and the fact that they are grouped together as one instruction cannot prevent the court from regarding them in their true character. If, therefore, this latter branch of the instruction stated the law correctly in relation to the subject to which it applied, it should have been severed from the other part and given to the jury.
At first this part of the instruction seemed to me to require the plaintiff to prove the express concurrence and co-operation of the defendant with Leonard in respect to these particular goods, and to imply that, in the absence of such proof, his presence and general complicity in the transactions of that night would not have authorized the jury to hold him responsible. But upon further consideration, I do not think this is the true meaning of the instruction. It does not indicate what sort of evidence is necessary to prove that the defendant *aided, assisted and concurred in the act of Leonard; it only affirms that the defendant is not liable for that act, unless it is shown in some way that he aided, assisted or concurred in doing it. I can see no objection to this proposition. And as the burden was on the plaintiff to make out his case, it. was for him, of course, to prove such aid, assistance and concurrence by the defendant as was necessary to make him responsible for the act of Leonard.
The court erred, therefore, in refusing to give the second part of the first instruction.
The second instruction asked for by the defendant declares that the plaintiff cannot recover in this action for injury to his credit or business standing, or the loss of profits which might have been made in his business, even though the jury should think that such injury or loss resulted from the acts of the defendant.
It does not appear how far the counsel for the defendant thought the jury could properly go in awarding damages in this case. It may be inferred from this proposed instruction that they insisted on restricting the damages to the value of the goods taken by the defendant, or by Leonard with his concurrence. Such is the rule of damages in an action of trespass to property committed without circumstances of aggravation, as for example in trespass de bonis asportatis, for goods taken under a bona fide claim of title. Sedgwick on Dam. 454; Knight v. Egerton, 7 Excheq. R. 407. Where that rule applies, no right of the plaintiff is violated except the right of property, and, therefore, the value of the property measures the full extent of the injury.
When the trespass is committed -without fraud, malice, oppression or other special aggravation, the object of the law, it is generally said, is to give compensation for injury suffered, and damages are restricted to that object. *Where the loss is merely pecuniary, and admits of definite estimate, it is proper enough to speak of compensation, which implies the notion of equivalents. But that word becomes inappropriate, where the injury is not merely pecuniary, and does not admit of definite estimate. The use of this word has, I apprehend, been productive of no little confusion in discussions relating to this branch of the law. It would be more appropriate to say that the object of the law is to give amends or reparation.- The injury done depends upon the rights that are violated, and the extent of the violation, and the amends or reparation in damages must be measured accordingly. This view of the subject, however, is rather curious than important in the present case.
Whatever be the true theory of damages in such a case, it is well settled that the plaintiff is entitled to recover all such damages as are the natural and proximate result of the wrongful act complained of. But where special damages, as in the present case, are not claimed, he can only recover such damages as are not only the natural and proximate result, but also the necessary result of the act complained of. The law implies from the statement of the injury, that it produced all such consequences as náturally and necessarily flow from such an act. And the real object of the evidence is not to prove the existence of the damage but to ascertain its extent.
The question, then, is whether such damages as are contemplated in this instruction, fall within the description of natural and necessary consequences of the acts complained of. That such acts are well calculated to injure the credit and business standing of a merchant, and that such will always be their effect, to a greater or less extent, seems too obvious to require proof by argument or illustration. They involve an imputation, in the harshest form, upon his credit and also upon his integrity. And *to take away a large part of a merchant’s stock of goods, if it does not break up and destroy his business, must, to a greater or less extent, injure it, by impairing the means of carrying it on and diminishing its profits.
The damages resulting from injury to the credit and business standing of the plaintiff, and from the injury to his business, *432 were, therefore, properly recoverable, as natural,, proximate and necessary consequences of the acts of the defendant. In Downell v. Jones, 13 Alab. R. 490, such damages were held to be recoverable as general damages for maliciously suing out an attachment against a merchant, which was levied on his .stock of goods.
In order to ascertain the damages resulting from the interruption or embarrassment of the plaintiff’s business, the nature and extent of the business, and whether profitable or unprofitable, are proper subjects of inquiry. Without information on these points, the jury would be without any guide to their discretion in the assessment of damages. But in such a case the probable profits of the business are not the measure of damages. The}’ are necessarily dependent on contingencies, and, therefore, as a general rule, not recoverable as damages. 8 Gratt. 16; 7 Cush. R. 516; 13 How. U. S. R. 307.
But while the probable profits of the business do not furnish the measure of damages, they may be proved to the jury by general evidence, as well as the extent and character of the business, as affording the best guide to the jury of which the nature of the cáse admits, in the exercise of their judgment in the assessment of damages. Such evidence tends to show the character and degree of the injury for which amends is to be made. Ingram v. Lawson, 6 Bing. N. Ca. 212 (37 Eng. C. L. R. 350); Downell v. Jones, 17 Alab. R. 689; Wade v. Leroy, 20 How. U. S. R. 34; Nebraska City v. Campbell, *2 Black’s U. S. R. 590; Brown v. Smith, 12 Cush. R. 366.
When the act complained of is accompanied by circumstances of aggravation, they may be proved under the general allegation of alia enormia, without further specification, when they do not afford a substantial ground of action. They give character and quality to the act complained of, and show the degree of the injury, and could not be redressed at all if not allowed to be proved as incidents of the trespass complained of. 2 Saund. Pl. & Evid. 1121; Sampson v. Coy, 15 Mass. R. 493; Faulkner v. Alderson, Gilm. 221. Thus, the facts that the defendant entered the store of the plaintiff in the night and' by collusion with his clerk, not to mention other facts which might have been found by the jury from the evidence in this case, were admissible in evidence, and proper subjects for the consideration of the jury’ in estimating the damages.
When the trespass is accompanied by circumstances of aggravation, which are proper to be considered by the jury, the theory of compensation, properly speaking, fails as a rule of damages. The injury arising from these circumstances does not, in its nature, admit of definite estimate, and it is impossible to fix its equivalent in damages. But even those who contend for the theory of compensation as the rule of damages in all cases, concede that damages may be given, in such cases, in the discretion of the jury’, proportionate to the character and extent of the injury and the circumstances of aggravation ; though they insist that they must be restricted to what is necessary’ to compensate the plaintiff: a restriction, in the nature of things, wholly indefinite. Others contend that the jury in such cases are not limited by the rule of compensation, but may’ give what are called indifferently exemplary, punitive or vindictive damages,- for *the sake of punishment and example. The discussion as to the theory of damages has been conducted with great learning and ability by Prof. Greenleaf in favor of the rule of compensation and by Mr. Sedgwick against it. 2 Greenl. Ev. § 253; Bost. L. Rep. April, 1847; Id. June, 1847; Sedgwick on Damages. Prof. Parsons agrees with Prof. Greenleaf. 3 Parson’s Cont. chap. 8. The views of Mr. Sedgwick are sustained by the Supreme court of the United States and by the courts of most of the states.
But if the jury’ are allowed to give damages for causes of aggravation which do not admit of definite estimate, which all admit, and if the court will not interfere unless the damages are so excessive as to indicate that the jury were actuated by partiality or prejudice, which is a well settled rule, it does not seem to be a matter of any practical importance whether the damages are given with a view to compensation, or with a view to punishment. If compensation is the rule, there is no measure for it except the discretion of the jury’, and if punishment and example are the rule, the damages are equally within the discretion of the jury. Upon whatever theory it rests, this right of the jury to give damages in proportion to the circumstances of aggravation and outrage, is necessary to secure full reparation and amends to the party injured, and exerts a wholesome influence upon society. The law confides in the integrity and good sense of the jury, under the supervision and control of the court, to prevent abuse upon the one hand and to secure justice upon the other.
I have made these general remarks upon the subject of damages, because this case is to go back for a new trial. Nothing that I have said, however, is intended to indicate an opinion as to the conduct of the defendant. That is a matter for the consideration of the jury alone.
The result is, that the second instruction asked by the ^defendant ought not to have been given. But the refusal to give it without explanation was calculated to mislead the jury, by creating the impression that they might enter into a conjectural estimate of the profits lost by the plaintiff, and make that the measure of damages. The court should, therefore, either have accompanied the refusal with an explanation of the purpose for which the profits of the plaintiff’s business were to be considered by the jury’, or should have given an instruction embodying the proper rule of damages.
It is unnecessary to notice the questions *433 raised by the last bill of exceptions. I am of opinion that the judgment should be reversed.
The other judges concurred in the opinion of JOYISIDS, J.
Judgment reversed.